UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY M. SCHRODER,                             Case No. 12-10582

    Plaintiff,                                    District Judge Patrick J. Duggan

v.                                               Magistrate Judge R. Steven Whalen

CITY OF WARREN, ET AL.,

    Defendants.
_____/

**OPINION AND ORDER**

Before the Court is Defendants' Motion to Strike Paragraphs 10-48 of Plaintiff's Complaint and for a More Definite Statement [Doc. #10], which has been referred for hearing and determination pursuant to 28 U.S.C. § 636(b)(1)(A). For the reasons discussed below, the Defendants' motion is DENIED.

**I.   BACKGROUND**

The complaint in this case stems from the Plaintiff's arrest and prosecution for operating a vehicle while intoxicated. Plaintiff was stopped by City of Warren Police Officer Stephen Colegio in the early morning hours of February 13, 2009. Officer Colegio contends that he had reasonable suspicion to make an investigatory stop for suspicion of drunk driving. Plaintiff disputes that Colegio had any facts that would objectively support a stop based on either reasonable suspicion or probable cause, and therefore contends that the stop and arrest violated his Fourth Amendment rights. On September 1, 2009, a jury acquitted the Plaintiff of operating a vehicle while intoxicated.

Defendants object to paragraphs 10-48 of the complaint. That section of the complaint recounts a highly antagonistic relationship between the Plaintiff, an Assistant

City Attorney for the City of Warren; Jim Fouts, the Mayor of Warren; and Kelly Colegio, Mayor Fouts secretary and advisor, and the wife of Defendant Police Officer Stephen Colegio. Plaintiff alleges that in 2008, Kelly Colegio became convinced that he was making disparaging comments about her using a pseudonym on a website known as the "Warren Forum." *Complaint*, ¶ 13. Plaintiff denies making those statements. *Id*. ¶ 16. In addition, Mayor Fouts accused Plaintiff of posting anonymous statements about him on the Warren Forum, and of being in communication with Joseph Munem, whom the Mayor believed was the operator of the Warren Forum. *Id.* ¶¶ 17-20. Plaintiff attended a meeting with Mayor Fouts and Kelly Colegio, both of whom expressed anger at the comments posted on the Warren Forum. Mayor Fouts told Plaintiff that Ms. Colegio was likely to bring a lawsuit, and Ms. Colegio told Plaintiff that her husband, Officer Stephen Colegio "would physically assault whoever did this." *Id*. ¶¶ 21-22. The situation went downhill from there, with the Mayor repeatedly telephoning and interrogating Plaintiff after hours, and cancelling Plaintiff's pre-paid Las Vegas vacation based on Kelly Colegio's belief that Plaintiff actually intended to meet with the internet domain hosting company for the Warren Forum (located in Arizona) in order to remove or "sanitize" any evidence of the author of the disparaging statements. *Id*. ¶¶ 23-27. The relationship between Plaintiff, Mayor Fouts and Kelly Colegio continued to worsen. The Mayor telephoned Plaintiff "and told him that Kelly Coletio had convinced him that Plaintiff was conspiring with Joseph Munem, a nemesis of Mayor Fouts and the purported owner of the Warren Forum, and that he (Mayor Fouts) wanted to meet with Plaintiff in his office." *Id*. ¶ 37. At the meeting, Plaintiff was ordered to give his cell phone to Kelly Colegio, and also to produce his personal cell phone billing records. *Id*. ¶¶ 39-41. Plaintiff agreed to produce his records to Mayor Fouts, but not to Kelly Colegio. He met

with the Mayor at the Mayor's house on February 1, 2009, and went over the phone records with him. However, when the Mayor asked if he could retain a copy of the records to show to Kelly Colegio, Plaintiff refused. *Id.* ¶¶ 44-47. Subsequently, Kelly Colegio "contacted City of Warren Deputy Public Service Director Gus Ghannam and asked specifically about Plaintiff, and Plaintiff's potential involvement with the Warren Forum." *Id.* ¶ 48. On February 13, 2009, Officer Stephen Colegio stopped Plaintiff's car, leading to the arrest and prosecution that are the subject of this complaint.

Pursuant to 42 U.S.C. § 1983, Plaintiff alleges a Fourth Amendment violation by the Defendant Officers (Count I) and the City of Warren (Count II), and state law claims of false arrest (Count III), false imprisonment (Count IV) and malicious prosecution (Count V) against all Defendants.

### III. DISCUSSION

In seeking to strike ¶¶ 10-48 from the complaint, Defendants argue that "the only possible argument that exists for the inclusion of paragraphs 10-48 in Plaintiff's Complaint is that they may support an argument that Defendant Police Officers' stop and detainment of Schroder was based on mere pretext or some ulterior motive. However, such arguments have no place in the legal analysis of this traffic stop under *Whren* [*v. United States*, 517 U.S. 806 (1996)]. In fact, [*United States* v.] *Hughes* [606 F.3d 311 (6th Cir. 2012)] holds that a trial court may *not* consider claims of pretext or ulterior motive in analyzing the validity of a traffic stop." *Defendants' Brief* [Doc. #10], at 10-11.

Defendants are correct that under *Whren* and *Hughes*, the constitutional reasonableness of a traffic stop does not depend on the actual motivations of the individual officers. Rather, as long as there are objective and articulable facts supporting probable cause or reasonable suspicion for the stop, it does not matter that these were pretextual, or that the subjective motivation of the police was based on something other

-3-

than a traffic violation. *See United States v. Hill,* 195 F.3d 258, 264 (6th Cir.1999) ("[A]n officer may stop a vehicle for a traffic violation when his true motivation is to search for contraband, as long as the officer had probable cause to initially stop the vehicle."). *See also United States v. Mosley,* 454 F.3d 249, 252 (3d Cir.2006) ("[A]ny technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime" (citing *Whren*).

So, the salient question in determining the Fourth Amendment issue in this case is whether there was probable cause or reasonable suspicion that Plaintiff was driving while intoxicated or committing some other traffic offense, regardless of whether the officers' subjective intent was more sinister. But the threshold question of whether there was probable cause or reasonable suspicion at the inception of the stop depends on the credibility of Officer Colegio, and a witness–including a police witness– is properly impeached by showing bias or motivation. *See  Davis v. Alaska,* 415 U.S. 308, 316-17, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Thus, in *United States v. Williams*, 2009 WL 3679337, *5 (N.D.Ill. 2009), the court, acknowledging the strictures of *Whren*, observed as follows:

> "The question, as far as the Fourth Amendment is concerned, is whether there was an objective rationale for a search or seizure, not whether an officer acted from ulterior motives or on the basis of pretextual reasons. *The latter inquiry may of course yield relevant facts against which to judge the credibility of an officer's testimony—and in this case it has, to Williams's advantage."* (Emphasis added).

Likewise, the court in *United States v. Alix*, 630 F.Supp.2d 145, 147 (D.Mass. 2009) held:

> "The Supreme Court's decision in *Whren v. United States,* which legitimized pretextual traffic stops so long as there is an objective basis for the stop, does not obviate the need for this Court to evaluate the credibility of the testifying officers. "Pretext" after all, does not mean that officers can testify about traffic violations when the record suggests they did not

happen." (Internal citations omitted).

And as Judge Clay observed in his concurring opinion in *United States v. Freeman*, 209 F.3d 464, 467 (6th Cir. 2000):

> "Although it is true that under *Whren v. United States*...a police officer may stop a vehicle for a traffic offense when his or her actual motivation is to search for contraband, it is also true that the officer must still have probable cause to make the initial stop, *and must not abuse the Whren principle by using it as a subterfuge to justify the recovery of contraband after an illegal stop and search*." (Internal citations omitted)(emphasis added).

Moreover, the complaint in this case sets forth other facts that call into question whether there was any objective basis to stop Plaintiff's car. Paragraph 92 refers to an expert report on police procedures, prepared before Plaintiff's criminal trial, indicating "obvious discrepancies between the submitted police reports and supplied video depicting the same incident, without a video showing the reported moving violations...." Thus, *Reid Machinery, Inc. v. Lanzer*, 421 Fed.Appx. 497, 2010 WL 4643305 (6th Cir. 2010), cited by Defendants, is distinguishable not only because that case did not discuss or rule on the admissibility of an officer's subjective motivation for impeachment, but also noted that the plaintiff in that case "offer[ed] no evidence to contradict the evidence in the record that the deputies" observed a traffic violation. *Id*. at *3. In the present case, the facts set forth in ¶ 92 of the complaint, along with the facts in ¶¶ 10-48, if true, cast sufficient doubt on Defendant Colegio's credibility to permit a trier of fact to find that there was no constitutionally permissible basis to stop and detain the Plaintiff.

Following discovery, there may or may not be an evidentiary basis to support summary judgment, and if there is a trial, the jury may or may not accept Defendant Colegio's credibility. But at this early stage of the proceedings, there is no basis to strike relevant factual material from the complaint, or to require the Plaintiff to make a more definite statement.

Accordingly, Defendants' Motion to Strike Paragraphs 10-48 of Plaintiff's Complaint and for a More Definite Statement [Doc. #10] is DENIED.

IT IS SO ORDERED.

                                              s/ R. Steven Whalen
                                              R. STEVEN WHALEN
                                              UNITED STATES MAGISTRATE JUDGE

Date: June 25, 2012

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on June 25, 2012.

                                              s/Johnetta M. Curry-Williams
                                              Case Manager